## D'ESTRINOZ *v.* GERKER, Collector.

(*Circuit Court, E. D. Pennsylvania.* April 8, 1890.)

CUSTOMS DUTIES—CLASSIFICATION—MANUFACTURED TOBACCO.

A cigar-shaped bundle of tobacco of an extremely large size was classified as manufactured tobacco. It was in evidence that it was used as an ornament in cigar dealers' windows, but that it could be smoked as a cigar. *Held,* that the fact of its capability of being smoked does not altogether determine its character, and, if the principal utility of the article is for some other purpose, the article is to be classed as manufactured tobacco, if for the ordinary purposes of a cigar, as such.

At Law.

This is a suit brought by Francisco R. D'Estrinoz to recover the sum of $525.35, alleged to have been illegally exacted by the defendant as a tax upon 6,565⅞ pounds of tobacco, at eight cents a pound, during the year 1886. It was shown that the plaintiff was not a manufacturer of tobacco, and did not have a license therefor, but was a manufacturer of cigars. The tax was levied at the rate of eight cents a pound as upon manufactured tobacco, under the provisions of sections 3362 and 3371, Rev. St., as amended. It was also shown on behalf of the plaintiff that the article was known as a "Jumbo" cigar, and bought, sold, and used in trade under that name. It appeared that it could be smoked as other cigars of smaller size, as the tobacco was laid without twist; that the grade was inferior to that known as manufactured tobacco; and that they were not sold as such, but generally for the purpose of ornament or as a novelty. Testimony was produced on the part of the defendant that the highest quantity of tobacco used in the manufacture of the ordinary cigar, as shown from the reports of the internal revenue department, is less than twenty-five pounds of tobacco to the thousand, and that the highest quantity of tobacco used was from 35 to 55 pounds per thousand, and that the quantity of tobacco used in the article in question was much higher.

*John A. Ward,* for plaintiff.

*Wm. Wilkins Carr,* Asst. U. S. Atty., and *John R. Read,* U. S. Atty., for defendant.

MCKENNAN, J., (*charging jury.*) There is but a single question in this case, and it is not a very broad one, and, as you will determine the one question of fact involved in the case, the result of the cause will be determined by you. The plaintiff here is a manufacturer of cigars, and obtained a license from the government to deal in cigars. He was charged by the collector of the district a certain sum of money on cigars manufactured by him, at the rate of eight cents per pound upon the certain number of pounds contained in an article which the collector classifies as manufactured tobacco, and which were claimed by the plaintiff to be cigars, within the meaning of that term. The question is, were they cigars, as claimed by the plaintiff? If they were, then the tax was erroneously assessed, and the plaintiff is entitled to re-

cover the amount of his claim. By the act of congress, a tax on all cigars made of tobacco, or any substitute therefor, of three dollars per thousand, is charged. You are to determine whether the articles upon which this tax was charged were "cigars," within the meaning of the term employed in the act of congress. That is the only question for you.

You have seen the article before you; you have heard the evidence of a number of witnesses as to what that article is. Is it a "cigar," within the meaning of the act of congress, or is it tobacco in some other form? That it is manufactured and subjected to a process of manufacture is evident. It is tobacco used for the purpose of putting the article in the form in which it is presented before you. Is it a "cigar," within the meaning of the act of congress? because, if it is, then the collector was in error in classifying it as something else. The ordinary rule is that words employed in the act of congress are employed according to their usual and accepted meaning, unless they have some special trade designation,—some special definition by the trade in which they are used. That is hardly the case here, because it appears that in the trade the word is used in the sense in which it must have been used all over. We all know what cigars are, and it does not require any great astuteness or any great knowledge to enable one to determine what a cigar is when he sees it. It is a bunch of tobacco rolled together and put into shape for smoking, and intended for that use. We all know. It is hardly necessary to produce witnesses to give any definition of what a "cigar" is, because it is a matter of common and universal knowledge, for the reason that the article is in common and universal use. You have the testimony of a number of witnesses on the part of the plaintiff, all of which I believe are engaged in the manufacture and sale of tobacco in some form or another, and they all say that this article is called a "cigar" in the trade. Whether it has any peculiar or exceptional meaning does not appear in the evidence. It seems to have been spoken of in the trade, as spoken of by everybody else, as a bunch of tobacco rolled up, and adapted for use and used for the purpose of smoking. That it may be smoked does not altogether determine its character. It may have some adaptibility for such use, but it may or may not be principally used for that purpose. If that is not the principal use of it, but if it is used for some other purpose, it is not to be taken as a cigar meant by the act of congress, and you will be guided somewhat by your own judgment as to the category in which this article is to be placed by your examination of it.

It appears in evidence here that this article was not made at all until some time after the passage of the act. Presumably, therefore, the term was used in the sense in which it was understood at the time of the passage of the act of congress. It applied only to such articles as were commonly known as "cigars." Besides that, it appears from the evidence of the revenue officer, Mr. Truell, that, taking all the cigars manufactured in the United States to which the term was used, which the department was to consider, not exceeding about 30 pounds of tobacco was em-

ployed in the manufacture of the articles which were known and called as cigars. Cigars in which three pounds of tobacco made a thousand, were known and considered throughout the whole trade in the United States as cigars, and presumably, therefore, as cigars referred to in the act of congress, and so designated. It appears, further, that this article is not in common used for the purpose of smoking; its use may be regarded as an exceptional use.

Taking this evidence, and all the other evidence in the case, the witnesses on both sides, and guided to some extent by your own judgment and by your knowledge of what a cigar is, it is for you to determine whether this is a cigar which congress intended to classify as such, and imposed a duty of three dollars a thousand upon. That is the simple narrow question. If you find, under all the evidence, that this is a cigar, then the plaintiff is entitled to recover the amount which he claims, four hundred and sixty odd dollars. If you find it is not, then your verdict must be for the defendant. It is apparently a very small question,—certainly a very narrow one,—and, as you will determine the classification in this way, you will decide this case. If it is not a cigar, then it seems to me that it must be classed as manufactured tobacco in some form, and within the meaning of another clause.

The plaintiff presents the following points:

"(1) If the jury find that the 'Jumbo Cigars' were really cigars manufactured, sold, and consumed as such, then your verdict must be for the plaintiff."

I affirm that point.

"(2) If the jury find that the ordinary and common use of the 'Jumbo Cigars,' as tobacco, was as a cigar, to be smoked from the mouth, your verdict must be for the plaintiff."

I affirm that point.

"(3) If the jury find that the plaintiff committed no fraud upon the government of the United States in the manufacture and sale of the 'Jumbo Cigars,' your verdict must be for the plaintiff."

There is no such point involved in this case, and I therefore disaffirm it. There is no reason to believe that the plaintiff did not think, as he defines it, this article was a cigar, and therefore it was taxable only under the clause which applies to cigars; but it is immaterial, and therefore I refuse the point.

"(4) Your verdict must be for the plaintiff."

I disaffirm that point.

The defendant presents the following points:

"(1) If you believe that the rolls of tobacco commonly called 'Jumbo Cigars' are not bought, sold, and used for the purpose of smoking the tobacco, then they are not cigars, within the meaning of the internal revenue act of March 3, 1883, and the plaintiff is entitled to recover."

In addition to what I have already said, I may say that they may be adapted to smoking; they may be put in such form that a person may put one of them in his mouth and smoke it; but, if that is not the prin-

cipal use to which they are devoted, that would not change any under-
standing and designation of them; they would still be something else
than cigars, and subject to a tax under another clause of the act.

"(2) If you believe that the rolls of tobacco, commonly called 'Jumbo
Cigars,' are made of smoking tobacco of any description, and are composed of
tobacco reduced into a condition to be consumed, then they are manufactured
tobacco, within the meaning of section 4 of the act of March 3, 1883, and the
tax is eight cents per pound, and the plaintiff is not entitled to recover."

I am inclined to think that that is the proper classification.    If they
are not cigars, they are manufactured tobacco, according to the act of
congress, reduced in a condition to be consumed, and are therefore subject
to taxation under another clause.

"(3) Your verdict in this case should be for the defendant."

I disaffirm that point.    This whole question is the single and simple
question, is this a cigar, within the meaning of the act of congress as it
was used by congress framing this law?    If they are, the plaintiff is
entitled to your verdict for $436.03; if they are not, then he is entitled
to recover back only the amount which was paid by mistake under the
assessment of the tax, $161.78.    Take a box of these things out with
you, look at them, and exercise, to some extent, your own judgment
as to what they are.