Caracul Fur Co. (Inc.) et al. *v.* United States (No. 3234)[1]

United States Court of Customs and Patent Appeals, November 4, 1929

*Curie, Lane & Wallace* (*Samuel Isenschmid* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks* and *Fred J. Carter*, special attorneys, of counsel), for the United States.

[Oral argument October 11, 1929, by Mr. Isenschmid and Mr. Carter]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Bland, Judge, delivered the opinion of the court:

The importation at bar consists of Exhibit 1, lambskin crosses, and Exhibit 2, lamb-leg crosses. They were assessed with duty at 40 per centum ad valorem as manufactures of fur, further advanced than dressing or dyeing, and sewed into crosses, under paragraph 1420 of the Tariff Act of 1922, the pertinent portion of which reads:

Par. 1420. * * * manufactures of furs, excepting silver or black fox, further advanced than dressing and dyeing, prepared for use as material, joined or sewed together, including plates, linings, and crosses, except plates and mats of dog and goat skins, and articles manufactured from fur, not specially provided for, 40 per centum ad valorem; * * *

The protest of appellant made several claims, but in this court one claim only is pressed, that is, that the merchandise is dutiable under paragraph 1459 at 10 per centum ad valorem as a nonenumerated unmanufactured article or at 20 per centum ad valorem as a nonenumerated manufactured article. While the other claims were not abandoned, we think we need only to consider the claim under paragraph 1459.

As to the merchandise represented by Exhibit 1, which is lamb crosses, the appellant abandoned his contention at the trial in the court below.

---

[1] T. D. 43687.

Exhibit 2 represents merchandise known as lamb-leg crosses, and while the record is long and in some instances slightly conflicting, we think it shows that the lamb-leg crosses are imported from China, where they are made by sewing together, into an article in the form of a cross, small pieces of dressed skins of lambs and occasionally small pieces of the dressed skins of kids, and that the pieces so sewn together are clipped from the legs, heads, tails, and bellies of the skins.

The importer contends that the record shows that prior to the years 1922 and 1923, the clippings which now go into the lamb-leg crosses were considered as waste and were thrown away. The Government insists that the record fails to show that prior to 1922 lamb-leg crosses were unknown in China. Government witness Lang stated that lamb-leg crosses were known in China in 1921 when he was there.

A comparison of Exhibits 1 and 2, being a lamb cross and a lamb-leg cross, respectively, shows that the lamb-leg cross seems to be made of more small pieces than the lamb cross and yet there are pieces in the lamb cross equally as small as the smallest piece in the lamb-leg cross. In manufacturing the lamb cross, skins are cut to various small forms and sizes and are matched as to quality. In Exhibit 2, the clippings are also matched as to quality, fineness of texture, curliness, etc. The crosses made from the body of the lamb are easily distinguishable from those made from the legs, and it is at once apparent that the lamb crosses are far more valuable than the leg crosses. It is conceded, however, that while there is a difference in quality and texture, they are both used for the same purpose; that is, in the manufacture of fur garments and for linings, etc.

It is conceded, we think, from the position taken by counsel on both sides, that both exhibits are manufactures. This concession is made in view of prior decisions of this court, namely, *United States* v. *Richter*, 2 Ct. Cust. Appls. 167, T. D. 31680; *Carlowitz* v. *United States*, 2 Ct. Cust. Appls. 172, T. D. 31681; and *Allum* v. *United States*, 4 Ct. Cust. Appls. 332, T. D. 33526.

The collector classified the importation at bar as a manufacture of fur. The importer contends here that the crosses are not manufactures of fur but manufactures of waste, and that there is no provision in the fur paragraph for manufactures of fur waste and that, therefore, they are dutiable as nonenumerated manufactured articles.

As we view the question, it is not necessary for this court to determine whether or not the clippings from which the crosses were made might, under certain circumstances, be regarded as waste for tariff purposes. This, of course, would depend upon the context of the paragraph and act, the history of the legislation, and possibly other considerations. Congress might see fit to treat lambskin leg trim-

mings as waste, but it must be remembered that we are not here passing upon the question as to whether or not the clippings before manufacture were or were not waste, but upon the sole question as to whether or not, when the clippings were manufactured into a fur cross, did they then become manufactures of fur.

We think that the merchandise at bar responds to the language of the fur paragraph, *supra*, insofar as it is fur manufactured. It may have been at one time, and for that matter may be now, regarded as of such poor quality of fur that it was and is ofttimes thrown away, but when thrown away, as we view it, it was fur thrown away. It did not possess all the valuable qualities of the remaining part of the fur hide, but it did have the quality of fur and was fur. It is undisputed in this case that it had the same use as the fur from the better portion of the hide.

Counsel for appellant has cited *United States* v. *Richter, supra; Allum* v. *United States, supra; Wimpfheimer* v. *Erhardt*, 59 Fed. 451, T. D. 10540, G. A. 190; *Pacific Iron & Metal Co.* v. *United States*, 15 Ct. Cust. Appls. 433, T. D. 42605; *Lang* v. *United States*, 4 Ct. Cust. Appls. 464, T. D. 33881; and *Rossman* v. *United States*, 1 Ct. Cust. Appls. 280, T. D. 31321, as supporting its position. It is not necessary to discuss these cases in detail. We do not believe they are controlling and all may be distinguished from the issue at bar.

The case of *Rossman* v. *United States, supra*, is especially relied upon and discussed. It involved a material named "granito," manufactured from marble chips. It was held dutiable as a nonenumerated manufactured article. The question as to whether it was a manufacture of marble was not considered. True enough, this court later, in *Lang* v. *United States, supra*, in speaking of the *Rossman* case, said:

In the *Rossman* case it was held that the material called granito, produced by crushing marble waste, practically worthless, but when crushed and screened of considerable value, was a nonenumerated manufactured article. The case is in no sense controlling here, as the question of whether it was a manufacture of marble was not considered, and if it had been, it might well have been answered by the fact that the manufacture was not of crude marble but of a worthless waste.

Even if this statement be not regarded as *obiter*, neither of the last two cited cases controls the issue at bar, since it is at once apparent that in the granito case the marble was crushed into sand or powder and then remanufactured. The case would be more in point if the marble chips had been, by some process, cemented together.

Supporting our view of the case and the view of the court below, as expressed in its well-written opinion, we think the following cases

are in point: *United States* v. *Hatters' Fur Exchange*, 1 Ct. Cust. Appls. 198, T. D. 31237, where fur, gathered in scraps or waste from the first treatment of the skins, was held not to be waste but undressed fur; *Chrystal* v. *United States*, 5 Ct. Cust. Appls. 489, T. D. 35148, where broken pieces of glass, crushed to a powder, were held to be a manufacture, and while it might be regarded as a manufacture of waste, was dutiable as a manufacture of glass; *United States* v. *Johns-Manville Co.*, 5 Ct. Cust. Appls. 404, T. D. 34939, where cork trimmings, being refuse from cork-manufacturing processes, were withheld from the waste paragraph which made waste dutiable; and *Pacific Iron & Metal Co.* v. *United States, supra*, where "wipers" or "wiping rags," which were processed from "junk, old," into a new commercial commodity, were declared to be manufactured articles.

We conclude that the collector's classification of the merchandise under paragraph 1420, and the assessment of the same with duty at 40 per centum ad valorem, was correct and the judgment of the United States Customs Court is *affirmed*.