SCHARF BROTHERS CO., INC. *v.* UNITED STATES (No. 4050) [1]

United States Court of Customs and Patent Appeals, May 29, 1937

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellants.
*Joseph R. Jackson,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney, of counsel), for the United States.

[Oral argument April 6, 1937, by Mr. Schwartz and Mr. Jackson]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The present appeal involves two importations of rock candy, one under the Tariff Act of 1922, and the other under the Tariff Act of 1930. These importations were made at the port of New York, and in the first case the imported merchandise was classified by the collector as confectionery not specially provided for, under paragraph 505 of the Tariff Act of 1922, and in the latter case as confectionery not specially provided for, under paragraph 506 of the Tariff Act of 1930. In the first case the merchandise was claimed to be dutiable under its appropriate rate under paragraph 501, or, alternatively, at 25 per centum ad valorem under paragraph 5, as a medicinal preparation, or, alternatively, at 20 per centum ad valorem under paragraph 1459 of the Tariff Act of 1922, as a manufactured article not enumerated. The importation under the Tariff Act of 1930 was claimed by the protest to be dutiable at 25 per centum ad valorem under paragraph 5, or at the appropriate rate under paragraph 501, or under paragraph 1558, as manufactured goods not enumerated.

The cases were consolidated on the trial, and it was conceded by the importer's counsel that the sole claim made by importer was that the

---

[1] T. D. 49038.

goods were dutiable as medicinal preparations under said paragraphs 5 of the respective acts of 1922 and 1930.

The relevant paragraphs are as follows:

Paragraph 5, acts of 1922 and 1930:

All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

Tariff Act of 1922:

PAR. 505. Sugar candy and all confectionery not specially provided for, and sugar after being refined, when tinctured, colored, or in any way adulterated, 40 per centum ad valorem.

Tariff Act of 1930:

PAR. 506. Sugar candy and all confectionery not specially provided for, 40 per centum ad valorem; sugar after being refined, when tinctured, colored, or in any way adulterated, 40 per centum ad valorem, but not less than the rate of duty provided in paragraph 501 for sugar of the same polariscopic test.

By agreement of counsel, the record in T. D. 47711 was offered in evidence. This was a record in a former case which had been heard by the Customs Court, and in which the issues were the same as in the case at bar, and wherein, speaking through Evans, J., the court had held that the imported material was properly classifiable as a medicinal preparation.

In the case at bar, the United States Customs Court reviewed the record in T. D. 47711, and also the record made in this case, and after having considered the same, was of opinion, as expressed by Evans, J., speaking for the court, that importer had failed to prove, in the case at bar, that the chief use of the imported material was as a medicinal preparation, and therefore sustained the classification. From that judgment the importer has appealed.

It appears that the only issue now before us is the correctness of the court's decision on the question of fact presented to it. In order to dispose of that question, some review of the testimony is necessary.

In the record in T. D. 47711, it appears that the material imported was identical with that here involved. It is crystallized sucrose consisting, as shown by the chemical analysis, of 99.86 per centum cane sugar or sucrose, crystallized on strings, and known commonly as white rock candy.

On the former hearing, the importer called as witnesses a pharmacist, an analyst, the treasurer of the importer company, and two licensed physicians. The first of these, David Kranis, stated that he sold rock candy, and that people purchasing the same stated that they used the same for the relief of throat irritations, as an expectorant, or, in connection with other herbs, as a sedative expectorant to relieve

smokers' throat, and to increase salivation and relieve "bringing up of the mucous." These, he stated, were the chief uses of rock candy. Sometimes, he stated, they purchased such other materials as brastlea or alphaea root, flaxseed and licorice, to be used with rock candy as a mixture. He stated that it was also used with alcoholic liquor in "Rock and Rye." He also introduced specimens of two medicinal preparations which contained rock candy and which were said to be cough remedies. He was of opinion that the action of rock candy was somewhat "more permanent" than that of other sugar.

Dr. Maxwell H. Poppel, one of the physicians, testified that he had been practicing medicine since June 1927; that he had learned the uses of rock candy; that it was used chiefly as a demulcent, "which is a substance that soothes mucous membranes and lessens irritations such as in any sort of chronic conditions; for burns, inflammatory swellings of an irritative nature decrease all the salivary secretions, where the purpose is to increase the saliva." He was of opinion that rock candy had a therapeutic value, "that its chief action is a demulcent," and stated that he had prescribed it; that it had value as a medicinal preparation, stating "It has the value that before the whole mixture reaches the esophagus, the rock candy takes an effect on the mucous surfaces in which it comes in contact, the moment it passes the lips until it passes into, mixes with the saliva in the mouth."

The other physician, Gustave Nemhauser, has practiced medicine since 1930 in New York City, and gave it as his opinion that rock candy was used as a demulcent and as an expectorant in acute and chronic throat infections and in irritations of the throat, such as smoking too frequently. He also stated that it had a therapeutic value and that he had seen it used to some extent among the poorer classes in the making of home remedies.

Upon this testimony the court was of the opinion, as heretofore stated, that the preponderance of the evidence showed the chief use of the imported commodity to be that of a curative or therapeutic agent.

In addition to the record in T. D. 47711, three witnesses were called on behalf of the Government in the case at bar, and one on behalf of the importer.

The witnesses called by the Government were James B. Ryan, past assistant surgeon, United States Public Health Service, William I. Green, in charge of the drug department of the United States Marine Hospital, at Ellis Island, and Elizabeth Goodman, a physician licensed to practice in the State of New York and several other States.

The witness Ryan had been connected with the Public Health Service for ten years, and was a graduate of the University of Maryland. In his official work at the United States Marine Hospital, at

Ellis Island, he treated approximately 100 patients a day, suffering from all sorts of human ailments. He testified that in all his experience he had never prescribed rock candy, and had never seen it used as a therapeutic agent. He stated that he had seen it used as "rock and rye," and as a candy, but knew of no other use for it, and stated that it had no therapeutic value, and was nothing but crystallized sugar; that an article was a therapeutic agent only if it cured disease or relieved symptoms of disease, and that there might be a supposed benefit to a patient from its use, but none of any therapeutic value; that its soothing effect upon the mouth and throat was similar to the effect which any liquid might create, and that it had no palliative action.

The witness Green had been at the United States Marine Hospital, at Ellis Island, for five years, in charge of the drug department, and was a graduate of Columbia University. This witness stated that he had heard only of the use of rock candy in conjunction with spirits for the supposed relief of colds; that he had been employed in drug stores for twenty years, and had sold rock candy many times, some for supposed home remedies. He stated that rock candy was not a demulcent, was not classified as such in the materia medica, and, in his opinion, was simply a vehicle to make other medicines easier to take; that it was not classified in the National Formulary, United States Pharmacopoeia, or United States Dispensatory.

The witness Elizabeth Goodman, a possessor of the "national order diploma," stated that she was licensed to practice medicine in practically every State in the Union, and had been in actual practice since 1932, specializing in the treatment of children in the Vanderbilt Clinic and in the public school system. She stated that she had never used rock candy in medicine, and never saw a reference thereto, as such, in any medical publication or publications on drugs; that it had no other effect than ordinary candy would have as a demulcent, and that its action in the mouth was purely mechanical; that the same effect would be produced by the use of ordinary "Domino" sugar; that it may be used to make syrup as a vehicle for other drugs, but has no separate action from a medical standpoint; and that honey would have the same effect. She denominated it not as a therapeutic agent, but as an "adjutant"; that if a demulcent was desired, other drugs and medicinal agents were used.

The testimony of the additional witness of the importer did not materially add to the facts already in the record.

After considering the testimony, the trial court was of opinion that, while rock candy may be used by some persons as parts of home remedies, such uses were not medicinal and were not its chief ones.

It is not an essential prerequisite that an article be named in the Pharmacopoeia or Dispensatory, or in other similar works, in order to

lead definitely to the conclusion that the article is a medicinal preparation. It does, however, seem that if an article be well known as such a medicinal preparation, it would be mentioned as such in some of the well-known books or treatises on such subjects. However, it is quite definitely determined that an article must have medicinal uses, and must be chiefly so used in order to constitute it a medicinal preparation. This was true in *Britt, Loeffler & Weil* v. *United States*, 7 Ct. Cust. Appls. 118, T. D. 36428, where food maltose in tins and malt soup stock in bottles was involved; and in *Tong & Co.* v. *United States*, 12 Ct. Cust. Appls. 32, T. D. 39897, where ginseng or chow sum was involved; and *United States* v. *Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T. D. 41706, involving scammony resin; and *United States* v. *Mrs. Carrie L. Franklin*, 19 C. C. P. A. (Customs) 65, T. D. 44896, involving "Pine-Ex Bath" capsules; and *United States* v. *Wm. Cooper & Nephews, Inc.*, 22 C. C. P. A. (Customs) 31, T. D. 47038, involving derris resin.

The use as a medicinal preparation must be a chief use, *United States* v. *Wm. Cooper & Nephews, Inc.*, *supra*, and this test is always to be applied in the ascertainment of whether an imported material is a medicinal preparation. *United States* v. *Hillier's Son Co.*, *supra*.

The trial court has passed upon the facts in this case, and we are unable to see that it has committed error in its findings. The testimony in the record as to the medicinal character of the imported material is, to say the least, not convincing, and we would not be justified in reversing the judgment of the trial court.

The judgment of the United States Customs Court is *affirmed.*

### DISSENTING OPINION

BLAND, Judge: I cannot agree with the conclusion reached by the majority that upon this record rock candy is not shown to be a medicinal preparation. It is difficult to understand from the opinion the exact reasons for reaching the conclusion that the imported merchandise is not a medicinal preparation. The opinion does not attempt to define a medicinal preparation.

The weight of the evidence clearly shows that rock candy, at the time of taking the testimony, was chiefly used in connection with other things for relief of throat irritation. No witness said that it was not chiefly so used, nor did any witness state that rock candy was chiefly used for any other purpose. Some of the witnesses stated that it had no therapeutic value. Some of them stated that it did have such value. Some of the witnesses also stated that syrup or sugar would accomplish the same purpose. There was credible evidence on this point to the contrary.

No definition of medicinal preparation that I have found in any of the decided cases requires that an ingredient chiefly used to cure

ailments must necessarily cure them or must have therapeutic value. Surely, after reading all the authorities, no court would be willing to assert that medicinal preparations must necessarily have therapeutic value or cure the ailments aimed at.

This court in *Smith & Son Manufacturing Co.* v. *United States*, 15 Ct. Cust. Appls. 277, T. D. 42468, said:

The contention that these vaccines are not medicinal or similar substances finds no support in reason or in the authorities. They possess, or are believed to possess, curative or alleviating properties, and are so used and administered because of that fact.

So eminent a customs authority as the late Judge Lacombe, in *Dodge & Olcott* v. *United States*, 130 Fed. 624, defined a medicinal preparation for the purposes of that case as "something which is of use, or believed by the prescriber or user fairly and honestly to be of use, in curing or alleviating, or palliating or preventing, some disease or affection of the human frame." The merchandise here is within this definition.

Obviously, Collectors of Customs cannot take the responsibility of determining whether or not every article chiefly used for the purpose of curing, preventing, or alleviating ailments has or has not therapeutic value or actually has the beneficial effect which it is believed to possess. Thousands of medicinal preparations, no doubt, have no curative properties whatever, but if the only use or chief use is as a medicine, they should be so classified. It is no answer to say that sugar or syrup will do the same thing rock candy will do. Sugar and syrup are not chiefly used for medicines. Upon this record we should hold that rock candy is chiefly so used. That whether or not a given substance is a medicinal preparation depends upon its chief use is so well settled as to call for no discussion here.

In view of the facts of record, I can only account for the conclusion reached by the majority upon the theory that using a material for curing throat trouble, which material does not have therapeutic qualities, is not regarded as being a medicinal use. I cannot agree that using a material to cure a throat is not a medicinal use, and if it is not a medicinal use, using a material with therapeutic qualities would not make it more of a medicinal use.

The importer in this case is entitled to know whether he lost it by virtue of the fact that the court was or was not of the opinion that the record showed it had no therapeutic qualities. The opinion should state the grounds upon which its conclusion is reached. In the opinion is the following statement: "* * * while rock candy may be used by some persons as parts of home remedies, such uses were not medicinal and were not its chief ones." The record affords no justification for this conclusion.

I think the question squarely put up to the court is: Is a single, unmixed ingredient, wholly or chiefly used, when combined with other things, to relieve throat irritations, to be regarded as a medicinal prep-

aration under paragraph 5 and dutiable at 25 per centum ad valorem, even though it be concluded that it possesses no therapeutic value. The answer to this question should be yes. The mere fact that it may at times be eaten or that it may be used with whisky to make "rock and rye" is immaterial as long as its chief use is shown to be for the purpose of curing throat troubles. If water were chiefly used to cure a malady, it should be regarded as medicinal.

Congress did not provide that medicinal preparations dutiable at 25 per centum under paragraph 5, Tariff Act of 1930, should have therapeutic value, and the fact that in drug paragraph 34 it mentioned therapeutic value seems to me to be significant.

It cannot be urged that rock candy is not a medicinal preparation because of the fact that it is used only in connection with something else. While the court does not say so in the majority opinion, it may be that this is the view entertained by the majority. Thousands of articles which are not classifiable as drugs but which are classified as medicinal preparations are imported by themselves but never used except in connection with something else. No supporting authority for this contention need be cited because no other conclusion, I respectfully submit, can logically be arrived at.